U–HAUL INTERNATIONAL, INC., A Nevada Corporation, and U–Haul Co. of Michigan, a Michigan Corporation, Plaintiffs,

v.

Ed KRESCH, Simon Kresch, Neu–Monics and Centre 40 Trucking, Jointly & Severally, Defendants.

Civ. A. No. 94–74341.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 16, 1995.

Julie A. Greenberg, Gifford, Krass, Groh, Sprinkle, Patmore & Anderson, Birmingham, MI, for Neu–Monics.

Steven B. Galbraith, Galbraith & Booms, Southfield, MI, for U–Haul Intern. Corp.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

On December 1, 1994, defendants filed the instant motion for summary judgment on plaintiff U–Haul International's first amended complaint. On January 31, 1995, plaintiffs filed a second amended complaint adding several new factual allegations and state law counts.[1] The second amended complaint also added a second plaintiff, U–Haul Co. of Michigan. For the reasons discussed below, the court will deny defendants' motion for summary judgment.

### I. Facts

The U–Haul Rental System, established in 1942 as a small truck and trailer operation, has continually expanded in size and sales revenue to the point today where this system includes over 1200 company owned U–Haul centers and 12,000 independent dealers throughout Canada and the United States. Plaintiffs have registered the "U–Haul" mark and many others with the United States Patent and Trademark Office. Plaintiffs have spent millions of dollars worldwide in advertising and promoting the service mark U–HAUL.

According to the second amended complaint, for the past nine years, U–Haul has promoted the number 1–800–GO–U–HAUL (1–800–468–4285) as a nationwide toll free telephone number for reservation services. The complaint also alleges that U–Haul's annual budget for this number is approximately $3.5 million.

Plaintiff U–Haul Co. of Michigan entered into a contract with defendants Ed Kresch and Centre 40 Trucking in January 1994 to allow Centre 40 Trucking to conduct operations as a U–Haul agency. Plaintiff terminated that contract on October 1, 1994, with termination to become effective on October 31, 1994. Defendants use the telephone number 800–468–4255. Defendant's number,

if translated into an alpha-numeric, can be identified as "800–GO–U–HALL." On October 24, 1994, plaintiffs sent a letter to defendants, in which plaintiffs requested that defendants cease using plaintiffs' trademarks and the telephone number "800–GO–U–HALL." Defendants continued to use the telephone number 800–468–4255. The second amended complaint also alleges that defendants have acquired two other numbers which infringe on plaintiffs' trademarks. These numbers are: 1–800–408–4285, which corresponds to 1–800–GO[zero]–U–HAUL and 1–800–408–4255, which corresponds to 1–800–GO[zero]–U–HALL. In addition, the complaint alleges that defendants have led consumers to believe that they have reached the national telephone number for U–Haul and have also used the U–Haul trademark on surveys sent to consumers.

On October 27, 1994, plaintiff filed a complaint for trademark infringement and an ex parte motion seeking a temporary restraining order barring defendants' use of plaintiff's trademarks and the telephone number "800–GO–U–HALL." On October 28, 1994, this court denied plaintiff's ex parte motion because plaintiff did not show that it had attempted to notify defendants about the motion. On November 2, 1994, plaintiff filed a verified first amended complaint and a second ex parte motion requesting that the court temporarily restrain defendants from using the "800–GO–U–HALL" telephone number. On November 3, 1994, the court granted plaintiff's motion based on facts in plaintiff's verified complaint and attached affidavits. On November 10, 1994, the court heard oral argument on plaintiff's motion for a preliminary injunction. On November 14, 1994, the court denied plaintiff's motion for preliminary injunction. Discovery must be completed in this action by May 15, 1995. Before the court is defendants' motion for summary judgment.

### II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on

---

1. Plaintiffs filed the second amended complaint pursuant to a stipulated order.

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg,* 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

### III. Analysis

Plaintiffs' second amended complaint alleges trademark infringement in violation of 15 U.S.C. § 1114(1)(a) and false descriptions and representations in violation of 15 U.S.C. § 1125(a).[2] Defendants argue that any use of plaintiffs' trademarks and service marks occurred with plaintiffs' consent when Centre 40 Trucking was an authorized U–Haul dealer and that the use of the telephone numbers does not constitute trademark infringement or false descriptions and representations.

Section 1114(1)(a) provides in pertinent part:

Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale ... or advertising of any goods

---

**2.** Plaintiffs' second amended complaint also contained several state law claims. These state law claims have been dismissed by the court.

or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1)(a).

Section 1125(a) states in pertinent part: Any person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which —— (A) is likely to cause confusion, or to cause mistake or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

■ Plaintiffs argue that defendants have infringed on plaintiffs' trademark rights in violation of 15 U.S.C. § 1114. Plaintiffs also argue that defendants have attempted to confuse the public through false and misleading representations in violation of 15 U.S.C. § 1125, which is intended to eliminate deceitful practices in interstate commerce. *Bernard Food Industries, Inc. v. Dietene Company*, 415 F.2d 1279, 1283 (7th Cir.1969). Section 1125 created a federal law of unfair competition, under which a variety of business products, practices, tradenames, trademarks, etc. are deemed worthy of protection. *Frisch's Restaurants, Inc. v. Elby's Big Boy*, 670 F.2d 642, 646 (6th Cir.1982). Plaintiffs argue that defendants' motion for summary judgment should be denied because plaintiffs will show at trial that defendants used U-Haul's trademark, used telephone numbers intended to derive benefit from U-Haul's name, deliberately led callers to believe that they had reached the national telephone number for U-Haul, and made false and misleading statements, representations and false designations of the origins of the services defendants provide.

■ Plaintiffs allege that defendants improperly used the trademark "U-Haul" in mailings to customers. As evidence, plaintiffs produced the copy of a questionnaire sent by defendants to its customers in which the U-Haul name is prominently displayed. The date on the envelope attached to the questionnaire is August 23, 1994, when Centre 40 was still an authorized dealer. Defendants argue that they were given the right to use the trademark at that time. Clearly this is a disputed question of fact and summary judgment cannot be granted as to this claim.

■ Plaintiffs also allege that defendants used three telephone numbers which correlate to misdialings of plaintiff's 1–800–GO–U–HAUL telephone number. Defendants argue in their motion for summary judgment that use of the phone number is not a basis for an action against defendants because Centre 40 Trucking has never used the alpha-numeric "800–GO–U–HALL" in promoting its business and therefore has never used plaintiffs' trademark. Plaintiffs have not provided the court with a copy of any advertisement in which defendants used the alpha-numeric "800–GO–U–HALL." Defendants have provided the court with the affidavit of Ed Kresch, who states that Centre 40 Trucking has never used the alpha-numeric "800–GO–U–HALL" in promoting its business.

In plaintiffs' response to defendants' motion for summary judgment, plaintiffs argue that their case is identical to *Holiday Inns, Inc. v. 800 Reservation, Inc.*, 838 F.Supp. 1247 (E.D.Tenn.1993), in which plaintiff Holiday Inns was granted a preliminary injunction to prevent defendant 800 Reservation Inc. from using a telephone number similar to Holiday Inns' number. In *Holiday Inns*, plaintiff Holiday Inns utilized the number 1–800–HOLIDAY, or 1–800–465–4329. The court discussed the background of such numbers, called vanity numbers. *Id.* at 1250. The court also discussed the existence of complementary numbers, or numbers which are similar to the vanity number but which will be misdialed by customers attempting to reach the vanity number. *Id.* at 1250. In particular, the court discussed the phenomena that callers confuse the "O" in a word with "0" (zero) on the telephone key pad. *Id.* at 1250. Defendant in *Holiday Inns* was a travel agency which bought the complemen-

tary number for Holiday Inns, 1–800–H(zero)LIDAY and other businesses in order to book customers for these hotels. Plaintiff sued defendant under trademark infringement, 15 U.S.C. § 1114, and unfair competition, 15 U.S.C. § 1125. The court explained that the standard for a preliminary injunction under both statutes is substantially identical—likelihood of confusion. *Id.* at 1253 (citing *Wynn Oil Co. v. Thomas,* 669 F.Supp. 831, 834 (M.D.Tenn.1986), *rev'd in part and aff'd in part,* 839 F.2d 1183 (6th Cir.1988)). The court acknowledged an eight factor test for determining whether there is a likelihood of confusion, but explained that defendant's intent is critical. *Frisch's Restaurants, Inc. v. Elby's Big Boy,* 670 F.2d 642, (6th Cir. 1982), *cert. denied,* 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982). The court acknowledged that the case was unusual because defendant admitted that he purchased the complementary number with the intent to derive benefit from Holiday Inns' reputation. Defendant argued that there was no use of plaintiff's trademark and therefore the court need not reach the issue of likelihood of confusion. The message provided by defendant explained that customers had misdialed and had not reached Holiday Inns. Then defendant offered customers options for making reservations at Holiday Inns and other hotels. The court found that the options defendant provided from Holiday Inns were more costly than if customers had dialed directly to a Holiday Inns telephone line. The court found that defendant had used plaintiff's mark in violation of the Lanham Act. *Id.* at 1255.

The instant case is somewhat different than the scenario described in *Holiday Inns* because defendants in the instant case allege that they purchased the 1–800–468–4255 while they were a U–Haul dealer, that they disclosed their use of the number to U–Haul, and that U–Haul did not object. Until discovery is finished and the parties have clearly presented the facts to this court, the court cannot make a final determination as to summary judgment on whether defendants' use of the complementary telephone lines constitute violations of section 1114 or 1125.

■ Plaintiffs also allege that defendants used the U–Haul name in responding to telephone numbers. Plaintiffs provide three affidavits of customers who state that they understood that they were in touch with U–Haul when they dialed defendants' number. Each of the affidavits relates to calls made by customers during the period when defendant was in fact an authorized U–Haul dealer. Discovery has not ended at this time and therefore plaintiffs may still show that defendants did use the U–Haul name in responding to calls after they were terminated as a U–Haul dealer. Therefore, summary judgment on this issue is premature.

■ Lastly, plaintiffs allege that defendants impermissibly used the U–Haul name in recorded messages played on the defendants' telephone lines. The first of two messages provided the court is the following:

We are no longer accepting U–Haul reservations. For quality one-way truck rentals, please call 1–800–GO–RYDER. If you must reach U–Haul, please call 313–467–3275.

The second message is the following:

You have reached Centre 40 Truck Rental. We regret to advise you that we have been unilaterally terminated without cause as an authorized U–Haul dealer by U–Haul International. We will thus be unable to serve our customers. We sincerely regret any inconvenience to you. We hope our differences with U–Haul will be amicably resolved so that we will again be given the opportunity to provide quality truck rental services for our customers in the years to come. In the interim you may wish to support us by calling 1–800–GO–RYDER for your next one-way truck rental. If you want to hear U–Haul's side of the story, or specifically require a U–Haul rental, please call 313–467–3275. Your support will be greatly appreciated.

Plaintiffs allege that these messages constitute use of the U–Haul name and disparaging false remarks. Defendants argue that these messages do not constitute trademark infringement or unfair competition because: (1) no false or misleading statements have been made; and (2) they are not used in commercial promotion but only for informa-

**1312**

tion purposes. Plaintiffs argue that the messages cause customers to believe that they have reached U–Haul. Both messages clearly explain that the party reached is not U–Haul. Also, both messages clearly provide callers with the number at which customers can reach U–Haul. The reference to U–Haul explains that U–Haul is *not* the sponsor of the message or the party answering the line. Thus, defendants are explicitly informing the public that U–Haul is not the sponsor of the goods that they are providing. *See Calvin Klein Cosmetics Corp. v. Parvums De Coeur, ltd,* 824 F.2d 665 (8th Cir.1987) ("A manufacturer does not commit unfair competition merely because it refers to another's product by name in order to win over customers ... if the reference is truthful and does not likely confuse consumers into believing that the copy is from the same source as the original." *Id.* at 668.); *Revlon Consumer Products Corp. v. Jennifer Leather Broadway Inc.,* 858 F.Supp. 1268 (S.D.N.Y.1994) (no violation of Lanham Act when leather furniture manufacturer states in advertising: "only Revlon has more colors."). Plaintiffs have cited no case law as to this question.

Plaintiffs argue that the statements that U–Haul terminated defendants without cause are false and damaging to U–Haul. Defendants dispute plaintiffs' assertion. There is clearly a dispute of facts on this issue. Defendants argue that the dispute of facts is irrelevant because according to *Gordon and Breach v. American Institute of Physics,* 859 F.Supp. 1521 (S.D.N.Y.1994), sections 1114 and 1125 only apply to·speech which is made in conjunction with commercial advertising or promotion. Defendants argue that the messages are not included in any advertising or promotion but are only played to callers of defendants' private line and therefore are protected. However, in *Gordon,* the court explained that the Lanham Act is directed at false representations in connection with the sale of goods or services. *Id.* at 1533 (quoting *Wojnarowicz v. American Family Ass'n,* 745 F.Supp. 130, 141–42 (S.D.N.Y.1990)). In the instant case, the messages clearly relate to sale of goods. Although they are not advertisements, they clearly promote the sale of goods by referring customers to Ryder.

Thus, defendants will not be granted summary judgment on this claim.

### *ORDER*

Therefore, it is hereby **ORDERED** that defendants' motion for summary judgment is **DENIED.**

**SO ORDERED.**